IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 05, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.           )<br>)<br>)<br>ROBIN CHANTELL       )<br>CHILDS-BECKHAM,      )<br>)<br>        Defendant    ) | Case No. 7:08-cr-00015<br><br><br>By:  Michael F. Urbanski<br>    Senior United States District Judge |

## MEMORANDUM OPINION

Defendant Robin Chantell Childs-Beckham ("Childs-Beckham"),[1] proceeding pro se, seeks expungement of her criminal record and all affiliation with this criminal case in which she was convicted and incarcerated for possessing more than five grams of cocaine with intent to distribute under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Am. J., ECF No. 36; Mot., ECF No. 47. For the reasons set forth below, Childs-Beckham's motion is **DENIED**.

## BACKGROUND

On March 6, 2008, Childs-Beckham was indicted on six counts of knowingly and willfully distributing a measurable quantity of a mixture or substance containing cocaine, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of knowingly and willfully possessing with the intent to distribute more than five grams of a mixture or substance containing cocaine base, a Schedule II narcotic controlled

---

[1] Childs-Beckham's Motion for Expungement notes that she was convicted under her maiden name "Robin C. Childs," though she refers to herself now as "Robin C. Beckham." Mot., ECF No. 47. Consistent with the Indictment, Plea Agreement, and Amended Judgment, this Memorandum Opinion will refer to defendant as "Childs-Beckham." Indictment, ECF No. 3; Plea Agreement, ECF No. 27; Am. J., ECF No. 36.

substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Indictment, ECF No. 3, at 1–3.

On June 30, 2008, Childs-Beckham pled guilty to Count Seven of the indictment. Plea Agreement, ECF No. 27, at 2. Counts One through Six were dismissed by motion of the government. Am. J., ECF No. 36, at 1. Childs-Beckham was sentenced to 60 months of imprisonment and four years of supervised release. Id. at 2–3.

On January 31, 2024, Childs-Beckham filed this pro se motion for expungement, seeking an expungement for equitable reasons. These equitable reasons involve actions she took after the trial terminated including: (1) completing post-incarceration re-entry programs; (2) being discharged early from supervised release; and (3) paying fees associated with her conviction in full. Mot., ECF No. 47, at 1. Childs-Beckham also points to difficulties faced after judicial proceedings concluded; specifically, she notes the loss of certain employment due to her conviction. Id. Childs-Beckham expresses a post-conviction focus on bettering the life of her children and now looks to have her record fully expunged. Id. at 2.

## ANALYSIS

Federal court jurisdiction is limited to that which is granted in the Constitution and by statute. United States v. Sims, 556 F. Supp. 3d 569, 570 (E.D. Va. 2021) (citing United States v. Mettetal, 714 F. App'x 230, 233 (4th Cir. 2017)). Since there is no applicable statute providing for expungement, the only available jurisdictional basis is the doctrine of ancillary jurisdiction. United States v. McKnight, 33 F. Supp. 3d 577, 580 (D. Md. 2014). The doctrine of ancillary jurisdiction recognizes a federal court's jurisdiction over some matters, which otherwise would be outside the court's jurisdiction, that are incidental to other matters

properly before the court. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378 (1994). The Court in Kokkonen observed that federal courts have ancillary jurisdiction over issues for two purposes: (1) to permit disposition by a single court of claims that are factually interdependent; and (2) to enable a court to manage its proceedings, vindicate its authority, and effectuate its decrees. Id. at 379–80 (citations omitted).

The Fourth Circuit Court of Appeals relied on Kokkonen to hold that federal courts do not have ancillary jurisdiction to grant petitions for equitable expungement. Mettetal, 714 F. App'x at 234–35. The district court in Mettetal looked at Kokkonen, and cited the Supreme Court's observation that federal courts have ancillary jurisdiction only where necessary to permit disposition by a single court of claims that are factually interdependent and to enable a court to manage its proceedings, vindicate its authority, and effectuate its decrees. Id. at 232–33 (citing Kokkonen, 511 U.S. at 379–80). Mettetal's claim did not satisfy these criteria because he sought expungement in response to post-termination harassment and loss of privileges due to his criminal record. Id. The Fourth Circuit affirmed, noting that neither the Constitution nor any federal statute confers upon federal courts the power to expunge criminal convictions such as those of Mettetal. Id. at 233.

Applying this understanding of ancillary jurisdiction, the court found that it did not have jurisdiction to expunge Mettetal's petition on equitable grounds, first noting that at least seven circuit courts have found that Kokkonen bars federal courts from invoking ancillary jurisdiction to expunge criminal records for purely equitable reasons. Id. at 234–35 (collecting cases). The court next noted that Mettetal argued that he had not run afoul of the law since his arrest more than twenty years earlier and that his criminal record had adverse professional

3

and personal consequences. Id. at 235. The court found that the facts underlying his request for equitable expungement did not satisfy the first prong of Kokkonen because they were not factually dependent on the underlying criminal case but instead dependent on facts collateral to or arising after the case was over. Id. (citing United States v. Wahi, 850 F.3d 296, 302 (7th Cir. 2017)). Nor would the exercise of ancillary jurisdiction satisfy the second prong of Kokkonen, because "equitable considerations which arise after the termination of court proceedings do not operate to vitiate decrees that went into effect years earlier." Id. "In short, Mettetal's petition for equitable expungement of his criminal records does not implicate either of Kokkonen's conditions for the exercise of ancillary jurisdiction, and we join the unified front of circuit authority in rejecting his claim." Id.

In the alternative, the court found that even if it had ancillary jurisdiction to consider Mettetal's claim, it failed on the merits. The court first found that cases where requests for expungement had been granted involved extreme cases, like mass arrests intended to curb the expression of civil rights. Id. at 236 (citing Sullivan v. Murphy, 478 F.2d 938 (D.C. Cir. 1973); United States v. McLeod, 385 F.2d 734 (5th Cir. 1967)); see also United States v. Schnitzer, 567 F.2d 536, 539–40 (2d Cir. 1977) (noting that the power to expunge is narrow and should not be routinely used by courts when a "'prosecution ends in an acquittal, but should be reserved for the unusual or extreme case'" (quoting United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975))). The court also noted that the judiciary and the public have an independent interest in maintaining a full and fair account of court proceedings and the judiciary's own role in the vindication of defendants' constitutional rights and found that the interest was present

in Mettetal's case. Mettetal, 714 F. App'x at 236. Based on the foregoing, the court concluded that Mettetal was not entitled to expungement of his record. Id.

In the instant case, the court determines that it does not have jurisdiction, ancillary or otherwise, to grant this motion for equitable expungement. The motion fails to allege a factually interdependent basis through which expungement could be granted as all the reasons alleged occurred after the termination of the case proceedings. A request for equitable expungement "always turn[s] on facts collateral to or arising after the case is over." United States v. Reid, No. PO-12-016850, 2022 WL 17816783, at *1 (D. Md. Dec. 16, 2022) (citation omitted). Childs-Beckham seeks expungement of her criminal record based on her post-incarceration participation in various re-entry programs, early discharge from supervised release, payment of conviction-related fees, and difficulties in maintaining employment due to her conviction. These actions and circumstances occurred after the termination of her criminal case and are not directly connected to the underlying criminal case. Mot., ECF No. 47.

Furthermore, Mettetal's request for expungement followed an acquittal; Childs-Beckham's case involves a conviction and incarceration which raise the judiciary's and the public's interest in maintaining a full and fair account of court proceedings and the judiciary's own role in them. See Mettetal, 714 F. App'x at 236 ("The judiciary and the public possess an independent interest in maintaining a full and accurate account of court proceedings and the judiciary's own role in the vindication of criminal defendants' constitutional rights."); see also Doe v. Public Citizen, 749 F.3d 246, 266 (4th Cir. 2014) ("[P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary."). As for the second prong, the granting of this expungement motion will not

"enable [this] court to manage its proceedings, vindicate its authority, and effectuate its decrees." United States v. Robrecht, No. 7:18-cr-0027-MFU-4, 2021 WL 120945, at *2 (W.D. Va. Jan. 12, 2021) (citations omitted). As the case has already been terminated and the motion does not refer to its own proceedings and decrees other than calling for its expungement, the motion does not fall under the court's proceedings, authority, or decrees.

Finally, even if the court did have ancillary jurisdiction, the motion would fail on the merits. While Childs-Beckham's positive post-incarceration behavior is commendable, and her employment difficulties unfortunate, they do not constitute an extreme circumstance authorizing the court to order expungement. See Mettetal, 714 F. App'x at 236 (remarking on "extreme circumstances" in which an expungement may be proper including mass arrests intended to curb the expression of civil rights); see also United States v. Coloian, 480 F.3d 47, 52 (1st Cir. 2007) (holding the district court lacked jurisdiction because (1) the original claims had nothing to do with the equitable grounds, (2) the expungement power was quite remote from what courts require to perform their functions, and (3) the records were entirely consistent with the jury's ultimate judgment in the case); Doe v. United States, 833 F.3d 192, 198 (2d Cir. 2016) ("'Expungement of a criminal record solely on equitable grounds, such as to reward a defendant's rehabilitation and commendable post-conviction conduct, does not serve any of the goals identified in Kokkonen's second prong.'" (quoting United States v. Sumner, 22 F.3d 1005, 1014 (9th Cir. 2000))).

For the reasons stated above, the court finds that it does not have jurisdiction to consider Childs-Beckham's request for expungement of her record. Accordingly, Childs-Beckham's request for expungement is **DENIED**. At the same time, the court recognizes the

positive steps Childs-Beckham has taken since her release from prison and notes that her continuing effort to stay focused and out of trouble will serve her well in the future.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: September 4, 2024

Michael F. Urbanski
Senior United States District Judge